UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RODERICK ZAVALA (K-68842), | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 17 C 3042 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| MARK DAMON, GHALIAH OBAISI; | ) |
| INDEPENDENT EXECUTOR OF THE | ) |
| ESTATE OF SALEH OBAISI, RANDY | ) |
| PFISTER, and WEXFORD HEALTH | ) |
| SOURCES, INC. | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

After injuring his hand while working in the Stateville Correctional Center ("Stateville") soap shop and allegedly failing to receive appropriate medical treatment for his injury, Plaintiff Roderick Zavala brought this civil rights action against Defendants Mark Damon, Saleh Obaisi,[1] Randy Pfister, and Wexford Health Sources, Inc. ("Wexford") pursuant to 42 U.S.C. § 1983. In addition to his claims against the individual Defendants, he pursues a *Monell* claim against Wexford, alleging that Wexford's cost-cutting policies prevented Zavala from receiving the proper and recommended post-operative care, including occupational therapy and other follow-up appointments. Wexford seeks dismissal of Zavala's *Monell* claim. Because Zavala pleads sufficient facts to allow the Court to draw the reasonable inference that Wexford maintained a widespread cost-cutting practice that deprived him of adequate medical care, the Court denies Wexford's motion to dismiss.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(a)(1), the Court substituted Ghaliah Obaisi, the executor of Dr. Saleh Obaisi's estate, in place of the deceased Defendant Dr. Saleh Obaisi. *See* Docs. 30, 35.

# BACKGROUND[2]

At approximately 9:15 a.m. on November 1, 2016, Zavala sustained injuries to his left hand while operating the soap machines in Stateville's Industry Soap Shop, part of the Illinois Correctional Industries ("ICI") program. Zavala's left hand was crushed and lacerated, with the most significant injuries occurring on his ring finger. Damon, the ICI supervisor of the Industry Soap Shop, did not know how to free Zavala's hand, leaving Zavala to do it himself. Zavala then went to Stateville's health care unit ("HCU"), run by Wexford, where the medical staff determined that his injuries were too severe to be treated within the HCU. Zavala was taken to Loyola Medicine, where Dr. Norman Weinzweig performed surgery on Zavala's left hand the following day. Loyola discharged Zavala on November 3, with instructions to keep the wounds clean and return for a follow-up appointment.

Dr. Obaisi, Stateville's medical director at the time, authorized Zavala's follow-up appointment, which occurred with Dr. Weinzweig on November 7, 2016. Dr. Weinzweig prescribed Zavala a Thermoplastic Splint and occupational therapy two-to-three times per week by an occupational therapist or certified hand therapist, and instructed that Zavala's stitches be removed at his next follow-up appointment, in two weeks and after Zavala received therapy. Zavala spoke with Dr. Obaisi regarding Dr. Weinzweig's treatment prescriptions that day. As of December 1, however, Zavala's wounds had not been cleaned and he had not had his stitches removed. Zavala had complained about this on several fronts to no avail. First, he filed a grievance with the Illinois Department of Corrections ("IDOC") on November 10 as an emergency, complaining that he was being denied proper medical care due to his failure to

---

[2] The facts in the background section are taken from Zavala's second amended complaint and the exhibits attached thereto and are presumed true for the purpose of resolving Wexford's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

receive therapy for his hand, and he resubmitted the grievance on November 28 after being told to resubmit the grievance in the normal fashion. He submitted a second grievance on December 1, complaining that the course of treatment Dr. Weinzweig had recommended was not being followed. Zavala also wrote letters to Dr. Obaisi on November 14, 21, and 28, detailing his pain and the need for therapy, to which Dr. Obaisi did not respond. Finally, Zavala also wrote to Pfister, Stateville's warden.

Then, on December 7, Dr. Obaisi authorized Zavala to see a certified hand therapist and to receive a Thermoplastic Splint. Zavala received treatment from Katherine Southworth, a certified occupational and hand therapist, on December 9 at Midwest Hand Care, Inc. Ms. Southworth similarly prescribed a splint and therapy three times per week. But Zavala did not return to Ms. Southworth, and instead next saw Dr. Obaisi on December 21. Zavala showed Dr. Obaisi a wound on one of his left fingers that had not closed, but Dr. Obaisi only gave him bandages to place over that wound. Zavala also expressed a need to receive further therapy, but Dr. Obaisi replied, "I know you need therapy, but I can't send you out." Doc. 32 ¶ 43. Instead, Dr. Obaisi arranged for Zavala to see Jose Becerra, a physical therapist at Stateville. Zavala saw Becerra on December 27, 57 days after his surgery and 48 days after Dr. Weinzweig's initial recommendation for therapy, but Becerra refused to treat Zavala until he had his stitches removed. Thereafter, Dr. Aguinaldo, who worked at Stateville's HCU, removed the stitches and cleaned Zavala's wounds. Zavala had a follow-up appointment with Dr. Weinzweig on January 25, 2017. Dr. Weinzweig again recommended occupational therapy three-to-four times per week and noted the presence of dense scarring at the site of the injury.

3

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Wexford argues that Zavala fails to allege sufficient facts to state a claim against it for § 1983 liability. A private company may be held liable under § 1983 for deliberate indifference pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). *See Chatham v. Davis*, 839 F.3d 679, 685 (7th Cir. 2016) (*Monell* liability "applies in § 1983 claims brought against private companies acting under color of state law"). Liability may rest on (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policy making authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). The policy or practice "must

be the direct cause or moving force behind the constitutional violation." *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (citation omitted) (internal quotation marks omitted). Additionally, Zavala must "plead[ ] factual content that allows the Court to draw the reasonable inference that [Wexford] maintained a policy, custom or practice" that contributed to the alleged violation. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (internal quotation marks omitted).

Wexford argues that Zavala uses only vague, conclusory language to support his allegations of a widespread policy or practice. Recently, however, the Seventh Circuit has reminded courts not to apply a "heightened pleading standard" to *Monell* claims. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (quoting *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)). Instead, *Monell* claims may proceed "even with conclusory allegations that a policy or practice existed, so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing." *Armour v. Country Club Hills*, No. 11 C 5029, 2014 WL 63850, at *6 (N.D. Ill. Jan. 8, 2014) (quoting *Riley v. County of Cook*, 682 F. Supp. 2d 856, 861 (N.D. Ill. 2010)). Here, Zavala has included sufficient factual allegations to put Wexford on notice of its alleged wrongdoing. He contends that Dr. Obaisi continuously ignored Dr. Weinzweig's and Ms. Southworth's prescribed course of treatment for Zavala, refusing to authorize necessary occupational therapy, timely send him for follow-up appointments, and otherwise monitor his recovery after surgery. Dr. Obaisi even went so far as to say, "I know you need therapy, but I can't send you out," Doc. 32 ¶ 43, lending some credence to Zavala's claim that Wexford maintained a cost-cutting policy against outside treatment, with Dr. Obaisi instead referring Zavala for physical therapy to a therapist employed at Stateville. *See Simmons v. Godinez*, No.

5

16 C 4501, 2017 WL 3568408, at *4 (N.D. Ill. Aug. 16, 2017) (collecting cases where plaintiff alleged that cost-cutting measures resulted in plaintiff receiving inadequate medical care, noting that in *Simmons*, Wexford employees told plaintiff that they could not send him to see an outside doctor because of the cost).

Wexford also argues that Zavala may not rely only on his personal experience with Wexford's medical care as the basis for his *Monell* claim. But again, the Seventh Circuit recently indicated that at the motion to dismiss stage, a plaintiff may rely solely on his own experience to state a *Monell* claim rather than having to plead examples of other individuals' experiences. *See White*, 829 F.3d at 844 (noting that plaintiff "was not required to identify every other or even one other individual who had been arrested pursuant to a warrant obtained through the complained-of process"); *Williams v. City of Chicago*, No. 16-cv-8271, 2017 WL 3169065, at *8–9 (N.D. Ill. July 26, 2017) ("Post-*White* courts analyzing *Monell* claims . . . have 'scotched motions to dismiss' premised on arguments that the complaint does not contain allegations beyond those relating to the plaintiff." (collecting cases)). Therefore, Zavala's claims that Wexford's cost-cutting policies, evidenced by its denial of the recommended post-operative treatment and therapy in his case, suffices at the pleading stage to state a *Monell* claim against Wexford. *See Barwicks v. Dart*, No. 14-cv-8791, 2016 WL 3418570, at *4 (N.D. Ill. June 22, 2016) (at summary judgment, a single incident cannot establish a *Monell* claim, but a plaintiff "need only allege a pattern or practice, not put forth a full panoply of evidence from which a reasonable factfinder could conclude such a pattern exists" at the pleading stage). This is particularly true here, where Dr. Obaisi admitted to Zavala that he could not authorize sending Zavala to an outside therapist, suggesting that Zavala's experience was not an isolated incident but rather a widespread Wexford practice. Discovery will uncover whether Zavala can establish

6

or prove his *Monell* claim, but at the pleading stage, he only need state a plausible claim for relief. *See Shields v. City of Chicago*, No. 17 C 6689, 2018 WL 1138553, at *4 (N.D. Ill. Mar. 2, 2018) (noting that the "City's arguments that Plaintiff's allegations do not 'establish' the existence of a widespread policy are misplaced because at this stage of the proceedings, the Court must determine whether Plaintiff has stated a plausible claim for relief, not that he has 'established' or 'proven' his claims"). The Court finds that Zavala has done so here, pleading sufficient facts to provide Wexford with adequate notice of its alleged wrongdoing.[3]

## CONCLUSION

For the foregoing reasons, the Court denies Wexford's motion to dismiss [42]. The Court orders Wexford to answer the second amended complaint by August 7, 2018.

Dated: July 17, 2018

SARA L. ELLIS
United States District Judge

---

[3] Wexford also argues that Zavala cannot pursue a *respondeat superior* claim against it under § 1983. *See Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) ("*Respondeat superior* liability does not apply to private corporations under § 1983."). In his response, Zavala affirms that he does not seek to hold Wexford liable for Dr. Obaisi's actions nor does he bring a claim for *respondeat superior* against Wexford. Based on this representation, the Court does not address this issue further, with the only claim proceeding against Wexford the *Monell* claim discussed above.